Baldwin, J.
delivered the opinion of the Court.
The proceedings in this case are founded upon the act of the 23d of March 1848, Sess. Acts 1848-9, p. 240, ch. 223; as appears from the order made on the application of the appellees to the County court and other parts of the record. That act must have been inspected by the Court, or relied on and conceded ; as it is referred to by its title in said order, which states that the applicants had complied with its provisions re *226 quiring the notice thereby prescribed. The existence °f the act was in no wise controverted in any part of the proceedings, either in the County or the Circuit , . . . . ... court, nor any objection taken to its due authentication. jt appears upon the printed statute book, published by Legislative authority, which was doubtless the reason why it was not spread at large upon the record, as it might have been from the printed statute book, that being legitimate proof of the statute. And now, by the New Code, p. 660, ch. 51, <§> 1, it is provided that an appellate Court shall take judicial notice of private or local acts that appear to have been relied on in the Court below. In this case, the act was not only relied upon, but made the foundation of the whole proceedings, and its inadvertent omission from the bills of exception stating the evidence, is therefore immaterial. The judicial notice we are to take of it, is the same with that which we give to laws of a general and public nature, and has reference to the hearing of the cause in the appellate forum, whether decided in the Courts below before or after the commencement of the revised statute. And this renders it unnecessary to consider whether the act in question is to be regarded as a public or private act, and dispenses with any formal amendment of the record.
The purpose of the act was to establish a ferry upon the lands of John and Lewis W. Wimbish, on the south side of the Roanoke river, in the town of Clarksville, to the lands of James Somerville, on the north side of the river, provided the public interest required it, and that matter was referred to the decision of the County court, which was directed to proceed upon the application of the Wimbishs, to cause a jury to be empanneled to view the place proposed, and to say whether, in their opinion, public convenience rvould result from the establishment of the ferry; and, upon such opinion, and any other evidence that should be offered, *227 the Court was authorized to establish the ferry, and fix the rates for passing the same.
No one doubts that it is within the legitimate province of legislation to establish highways, whether by land or water, or ferries or bridges across water courses, for the convenience and use of the public; and that there is no limitation of this power, other than the regard due to the rights of private property, which cannot be invaded or taken from the owner without just compensation. Such eminent domain may be exercised by the legislative department, either directly or through the instrumentality of judicial, or other tribunals, or agents; and the expenses of construction, reparation and other charges, may be defrayed out of the public treasury, or by means of franchises, granted to companies or individuals, or attached when appropriate, to the ownership or use of the soil.
The power of the Legislature to establish particular ferries by direct and special enactments has been freely exercised, from an early period of our colonial history, down to the present time; and our statute book is full of such laws. This eminent authority never has been, and never could have been, surrendered by the delegation of it to any extent, whether limited or unlimited, to judicial or other tribunals ; and has continued to be exercised, notwithstanding the power given by the act of 1705, (3 Hen. St. 475,) and of 1792, (1 St. L., N. S. p. 152,) to the County courts, in general terms, to appoint such ferries over rivers and creeks, in their respective counties, as should be deemed convenient and necessary, and the act of 1806, (3 Id. p. 301,) and the revised act of 1819, (2 Rev. Code, p. 261, 267,) prescribing the limits and providing for the exercise of their jurisdiction on that subject.
The last mentioned act is a general law providing for the establishment of ferries, on the application of the owner of land on both sides, or one side only, of any *228 water course, through which a public road passes. The ownership of the land, and the existence of the public road are, under this general law, essential to the juris-' diction of the Court. The degree or evidence of ow¡nership required by it, we need not consider here. In the present case, the application is not founded upon it, but upon the special act of the 23d of March 1848, passed upon the representation, “ to the General Assembly that the establishment of a ferry from the lands of John and Lewis W. Wimbish, on the south side of Roanoke river, in the town of Clarksville, in the county of Mecklenburg, to the lands of James Somerville on the north side of the said river, would very much promote the convenience of the people and facilitate their intercourseand its provisions are full and complete for that object, without reference to or deriving any aid. from the general law above mentioned.
This special act designates the place where, and the persons on whose application, the ferry should be established ; and the designation is satisfied by the possession and enjoyment of the Wimbishs, under a bona fide and undisputed claim of title. It could not have been in the contemplation of the Legislature to submit to the jury or the Court the question, whether any flaw could be found in the title of the appellant, which by possibility might at some future day give rise to an adverse claim to the property. The Legislature doubtless proceeded upon the assumption and belief of the fact, that the Wimbishs were the owners of the land which they held and claimed and enjoyed, and to which no one else asserted a title; and there was no necessity for any further enquiry upon that subject. The public interest could be in no wise affected by a recovery of the land from them thereafter upon a paramount claim of title, nor could the establishment of the ferry in any degree redound to the prejudice of the future claimant. It could not affect his title to the subject, inasmuch as *229 he would not be bound by a collateral adjudication of a collateral question, in which moreover he might not know at the time that he had any interest. The notice required by the act. to the owners of all lands which would be affected by the establishment of the ferry, did not embrace the case of-persons who had no existing ownership or even claim to the locus in quo ; but had reference to other lands, and was properly applicable to the appellant Somerville, whose land on the opposite shore was the seat of a conflicting ferry.
We need not therefore consider whether there is any defect in the derivation by the appellees of their title. The merits of the case turn upon different questions, one bearing upon the public interests, and the other upon the individual rights of Somerville. The first is simply whether, in the language of the statute, “public convenience will result from the establishment of the ferry;” the affirmative of which we consider abundantly proved by the evidence in the record, which we think requires no comment. The second has a double aspect, one looking to the appellant’s right of property in his land, the other to his right of property in his ferry.
A ferry franchise is with us the creature of our statute law: and the instances are extremely rare of a grant of it to individuals personally. By the course of our legislation since 1748, and under our existing laws, the owner of the ferry seat is incidentally the owner of the franchise. In establishing a ferry, the usual form of its designation is from the lands of an individual on one side of the water course, to the lands of another or the same individual on the opposite side; and the place of departure is always regarded as the seat of the ferry. There is no necessity for requiring a more precise description of the ferry ways on either side; and it would be extremely inconvenient to do so, both as regards the public and the ferry keeper; for that would *230 render an exact description on both sides by metes and bounds indispensable, and make every departure from them unlawful, however immaterial, and whatever the. urgency of the occasion; and though attended with no' invasion whatever of the rights of others. And hence it probably is that no provision has ever been made in all our legislation on the subject, whether general or special, for the condemnation of a landing on the opposite side from the ferry seat. The Commonwealth confers, by her grant of the franchise, such right in regard to landing on the opposite shore as she may lawfully impart, and no more. The very object of the grant carries with it whatever privilege the public then has, or may thereafter acquire, to the use of a highway there for that purpose; and if the grantee claims any thing more, he must shew a title to it by private contract. It is not to be supposed for a moment that the Commonwealth contemplates by the creation of the franchise what is beyond her power to grant, the invasion of the property of others without compensation.
As to the alleged invasion of the appellant’s right of property in his ferry, we need not enquire how far such a franchise is protected from competition by the doctrines of the common law. The question here is how far it is exclusive under the provisions of our statute law. The ferry seat, as we have seen, is on one side of the water course. It is there only that the ferry keeper is bound to keep his boats and his hands; there are no such obligations in regard to the opposite side: his right to take in passengers on that side has frequently been questioned; and hence the often repeated provision 'in our legislation authorizing him to do so. The establishment of an opposite ferry may often be demanded by the public interest and convenience ; the power has been repeatedly exercised by direct legislation, and often conferred upon the County courts; and prior to the revised act of 1792 (1 St. L., N. S. 152,) *231 their general jurisdiction to establish ferries embraced such only. And that act, by which the appellant’s ferry, amongst many others, was established, contains . . . , ,, n an express provision that wherever there was no terry corresponding to any one thereby appointed, it should be lawful for the County court to constitute and appoint an opposite ferry, with the same rates. It is true that by the act of 1840, (Sess. Acts 1839-40, ch. 79, <§> 1, p. 58,) in order to prevent injurious competition, the Courts are prohibited from granting leave thereafter to establish a ferry over any water course within one half mile, in a direct line, of any ferry legally established over the same water course : But if that prohibition embraces opposite ferries, as to which we express no opinion, it was no surrender of the legislative power thereafter to establish such opposite ferries, whether directly or through the agency of the Courts.
The right of the owner of the opposite ferry to participate in the use of the ferry way on the other side of the stream, depends upon the correctness of the views already presented. The establishment of his ferry confers upon him no title to any portion of the soil on the other side, and no easement there beyond the incidental delegation of such as has been theretofore, or may thereafter be, acquired by the public as a 1 highway, or derived from the consent or contract of / the owner of the land, or those under whom he claims. 1
We are of opinion, therefore, that the establishment of the ferry in question will be no invasion of the appellant’s right of property in his land, nor of his right of property in his ferry. The effect of it will be the grant of a franchise as incidental to the apparent ownership of the ferry seat, with the enjoyment of tolls and other appurtenant privileges. Such franchise will prevail against all wrongdoers who may invade it in any respect. But it cannot prevail in favour of the apparent owner against any adverse claimant of the *232 ferry seat who shall establish a paramount title. Nor will it confer any right to use the opposite land of the appellant for a ferry way, except as above mentioned. Whether it will carry with it the privilege of using any public roads on the opposite land, for the purpose of landing or taking passengers, &c., is a question which we deem it unnecessary to determine. That is a question which does not properly arise in this controversy about the establishment of the franchise, though it may in future controversies with the appellant, or others claiming under him, in regard to the extent of the franchise so established.
As to the evidence in the record in relation to the existence, the antiquity, the user or non-user, the abandonment by the owners, the recognition by the appellant, or the acquisition by the appellees, of Royster’s ferry — whether it may have any bearing or not upon future controversies — it has none that we can-perceive upon the one before us, unless perhaps it may tend to throw some light upon the question, whether the ferry now sought to be established will be of convenience to the public. The title, it is true, of the act of 1848, upon which the present application is founded, is “ to revive the ferry at Clarksville, in the county of Mecklenburg, formerly known as Royster’s ferry, across Roanoke riverbut that title is inappropriate to the enacting clauses, which look to the establishment de novo of a ferry upon the application of the appellees.
The formal objections taken in the argument to the proceedings in the Courts below, we think not well founded, for reasons to be deduced from the remarks already made upon the merits.
The Court is of opinion, that there is no error in the judgment of the Circuit court affirming that of the County court; and it is considered that the same be affirmed, with costs to the appellees.
Judgment affirmed.